**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------------

Georg Neumann GmbH,

       *Plaintiff,*

          *v.*

GoToToolz Ltd. and Ian Davidson,

       *Defendants*.

---------------------------------------------------------------------------------

Civil Case No. ___23-5808___

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Georg Neumann GmbH ("Plaintiff" or "Neumann"), by its undersigned attorneys, for its Complaint against GoToToolz Ltd. (hereinafter "GoToTools") and Ian Davidson ("Davidson") (collectively, the "Defendants"), herein alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this civil action against Defendants for trademark infringement under 15 U.S.,C § 1114 and 15 U.S.C. § 1125(a); common law trademark infringement; trademark counterfeiting under 15 U.S.C. § 1114(1)(b); trade dress infringement under 15 U.S.C. § 1125(a); false representation of origin under 15 U.S.C. § 1125(a); unfair competition under 15 U.S.C. § 1125(a) and New York common law; and trademark dilution under 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. L. §360-1.

## THE PARTIES

2.    Plaintiff is a limited liability company organized and existing under the laws of Germany, with its principal place of business located at Leipziger Straße 112, 10117 Berlin Germany.

3.      Upon information and belief, GoToToolz is a corporation organized and existing under the laws of New York, with its principal place of business located at 3 Brighton 10th Lane, Brooklyn, New York 11235.

4.      Upon information and belief, Defendant, Ian Davidson ("Davidson"), is a resident of New York and maintains a place of business at 3 Brighton 10th Lane, Brooklyn, New York 11235.

5.      Upon information and belief, GoToToolz is owned and/or controlled by Davidson, and Davidson is personally liable and responsible for the wrongful acts of GoToToolz for any of the following reasons:

a)      Upon information and belief, Davidson has personally and directly participated in all of the wrongful acts hereinafter set forth;

b)      Upon information and belief, Davidson has personally and actively directed the activities of GoToToolz and has personally directed other employees or agents of GoToToolz and/or their own employees and agents to commit the wrongful acts hereinafter set forth;

c)      Upon information and belief, Davidson has personally and directly controlled the operation of GoToToolz as an instrument to carry out wrongful acts as hereinafter set forth;

d)      Upon information and belief, Davidson is behind the management and operation of GoToToolz and has personally guided GoToToolz in the wrongful acts hereinafter set forth;

e)      Upon information and belief, Davidson has personally and conjointly transacted business in the name of GoToToolz; and

2

f)    Upon information and belief, Davidson has been aware of the rights of Plaintiff but, notwithstanding such knowledge, has conjointly, with and through GoToToolz, committed the wrongful acts hereinafter set forth.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a).

7.    Upon information and belief, Defendants are domiciled in and regularly transact business in New York.  On information and belief, Defendants' tortious acts that are the subject of the present suit have been, and continue to be, committed in New York. Accordingly, this Court has personal jurisdiction.

8.    Venue is proper under 28 U.S.C. § 1391(b) and (c).

## FACTS COMMON TO ALL COUNTS

### A.    Plaintiff's Goods and the NEUMANN® Marks

9.    For more than 70 years, Plaintiff has  designed, manufactured, produced, distributed and sold legendary microphones used by professionals for studio and live sound applications.

10.    Commencing at least as early as 1959, Plaintiff adopted, applied and continuously used the trademark NEUMANN® in conjunction with microphones.

11.    Plaintiff's NEUMANN® microphones are widely used and acclaimed for their smooth and refined sound, their versatility, elegant design and have become the industry standard, offering users unsurpassed sound quality, reliability and lasting value.

12.    Plaintiff's NEUMANN® microphones have been used by countless artists, producers, and sound engineers over the decades. For example, some famous users include the Beatles, Michael Jackson, Stevie Wonder, John Lennon, Beyoncé, Amy Winehouse, Ray Charles, the Rolling Stones, Bruno Mars and Marvin Gaye.

13.     Plaintiff's NEUMANN® microphones have also been used to record many iconic recordings, such as Bohemian Rhapsody, Imagine, Hey Jude, What's Going On, and many more.

14.     Plaintiff's NEUMANN® microphones are not only popular in music production, but also in other fields such as film, television, radio, podcasting, voice over, dubbing, audiobooks, and gaming; they are known for their ability to capture speech and vocals with clarity, naturalness and character.

15.     Plaintiff's NEUMANN® microphones are adored and revered by music vocalists, instrumentalists, producers, sound engineers and musicians alike, and, as a result, the NEUMANN® trademark has become famous.

16.     Plaintiff has applied the famous NEUMANN® trademark directly to its microphones on a diamond shaped three dimensional plaque or badge, which is affixed to each microphone, as shown in attached **Exhibit A** and **Exhibit B**.

17.      Plaintiff has applied various colors to the three dimensional plaques or badges as a way of identifying the types of microphones to which each of the badges have been applied, *i.e.*, black denotes a tube–based microphone, purple denotes a FET-based microphone, red denotes an FET microphone without an output transformer, blue denotes a digital microphone and green denotes a dynamic microphone. Such plaque or badge color associations are known to purchasers and prospective purchasers of Plaintiff's NEUMANN® microphones.

18.     Plaintiff has additionally applied the famous NEUMANN® trademark directly to its microphones within an annular band on the base of each microphone beneath the diamond shaped three dimensional plaque, as shown in **Exhibits A** and **B**.

19.     Plaintiff has adopted, applied and used the following model designation trademarks in conjunction with its  NEUMANN® microphones, such as: KMS 105®, M 49®, TLM 102®,

TLM 103®, U 47®, U 87®: which trademarks have been duly registered on the Principal Register of the United States Patent and Trademark Office

20.     Numerous trademarks owned by the Plaintiff (collectively, the "Neumann Marks"), have been registered on the Principal Register of the U.S. Patent and Trademark Office including but not limited to, the following:

| Mark | Filing Date/ Registration Date | Goods/Services |
|---|---|---|
| <br><br>Reg. No.: 698,915 | Filing Date: July 31, 1959<br><br>Registration Date: June 7, 1960 | Class 21: *[Disk Playback Turntables, Stereo Disk Cutterheads,] Condenser and Miniature Microphones, [Power and Battery Supply Units, Microphone Interconnecting Cables, Band-Pass Filters, Light Signal Apparatus, Microphone Test Units,] Microphone Stands, [Adapter Plugs and Accessories, High Intensity Overload Protectors, Test Capsules, Power Supply Enclosures, Headphones and Headsets, Pistonphones, Disk Recording Lathes]* |
| NEUMANN<br><br>Reg. No. 2,166,903 | Filing Date: Sep. 25, 1996<br><br>Registration Date: June 23, 1998 | Class 9: *microphones and accessories therefor, namely, microphone windscreens and diffusers, suspensions, cases, mounts, adapters, adapter plugs, holders, stands, power and battery supply units, microphone cables and interconnecting cables; signal processing equipment, namely, preamplifiers, equalizers, limiters, compressors, mixers, amplifiers, remote controls, transformers and matrix amplifiers, electronic controllers, disk recording lathes, cutter heads, and parts therefor* |
| KMS 105<br><br>Reg. No. 6,886,632 | Filing Date: Apr. 1, 2021<br><br>Registration Date: Nov. 1, 2022 | Class 9: *Equipment for the recording and reproduction of electroacoustic or acoustic signals; microphones; headsets, namely, headphones; studio monitor loudspeakers; microphone pre-amplifiers; audio interfaces; structural parts of the aforesaid goods; accessories for the aforesaid goods, namely power supplies, electrical cables, cable adapters being cable connectors, tripods, swivel microphone mounts, microphone capsule extensions being microphone modules, table stands for microphones, floor stands for microphones, microphone tilting apparatus being microphone stands, swan necks for microphones being* |

| | | |
|---|---|---|
| | | *booms for microphones, windscreens for microphones, microphone mounts* |
| M 49<br><br>Reg. No.: 6,770,185 | Filing Date:<br>Apr. 6, 2021<br><br>Registration Date:<br>Jun. 28, 2022 | Class 9: *Equipment for the recording and reproduction of electroacoustic or acoustic signals; microphones; headsets, namely, headphones; studio monitor loudspeakers; microphone pre-amplifiers; audio interfaces; structural parts of the aforesaid goods; accessories for the aforesaid goods, namely power supplies, electrical cables, cable adapters being cable connectors, tripods, swivel microphone mounts, microphone capsule extensions being microphone modules, table stands for microphones, floor stands for microphones, microphone tilting apparatus being microphone stands, swan necks for microphones being booms for microphones, windbreaks in the nature of wind protection microphone covers being microphone windscreens, microphone mounts* |
| 49<br><br>Reg. No. 6,874,549 | Filing Date:<br>Apr. 6, 2011<br><br>Registration Date:<br>Oct. 18, 2022 | Class 9: *Equipment for the recording and reproduction of electroacoustic or acoustic signals; microphones; headsets, namely, headphones; studio monitor loudspeakers; microphone pre-amplifiers; audio interfaces; structural parts of the aforesaid goods; accessories for the aforesaid goods, namely power supplies, electrical cables, cable adapters being cable connectors, tripods, swivel microphone mounts, microphone capsule extensions being microphone modules, table stands for microphones, floor stands for microphones, microphone tilting apparatus being microphone stands, swan necks for microphones being booms for microphones, windscreens for microphones in the nature of wind protection microphone covers being microphone windscreens, microphone mounts* |
| TLM 102<br><br>Reg. No. 6,886,631 | Filing Date:<br>Apr. 1, 2021<br><br>Registration Date:<br>Nov. 1, 2022 | Class 9: *Equipment for the recording and reproduction of electroacoustic or acoustic signals; microphones; headsets, namely, headphones; studio monitor loudspeakers; microphone pre-amplifiers; audio interfaces; structural parts of the aforesaid goods; accessories for the aforesaid goods, namely power supplies, electrical cables, cable adapters being cable connectors, tripods, swivel microphone mounts, microphone capsule extensions being microphone modules, table stands for microphones, floor stands for microphones, microphone tilting apparatus being microphone stands, swan necks for microphones being* |

| | | |
|---|---|---|
| | | *booms for microphones, windscreens for microphones, microphone mounts* |
| TLM 103<br><br>Reg. No. 6,886,634 | Filing Date:<br>Apr. 1, 2021<br><br>Registration Date:<br>Nov. 1, 2022 | Class 9: *Equipment for the recording and reproduction of electroacoustic or acoustic signals; microphones; headsets, namely, headphones; studio monitor loudspeakers; microphone pre-amplifiers; audio interfaces; structural parts of the aforesaid goods; accessories for the aforesaid goods, namely power supplies, electrical cables, cable adapters being cable connectors, tripods, swivel microphone mounts, microphone capsule extensions being microphone modules, table stands for microphones, floor stands for microphones, microphone tilting apparatus being microphone stands, swan necks for microphones being booms for microphones, windscreens for microphones, microphone mounts* |
| U 47<br><br>Reg. No. 6,886,633 | Filing Date:<br>Apr. 1, 2021<br><br>Registration Date:<br>Nov. 1, 2022 | Class 9: *Equipment for the recording and reproduction of electroacoustic or acoustic signals; microphones; headsets, namely, headphones; studio monitor loudspeakers; microphone pre-amplifiers; audio interfaces; structural parts of the aforesaid goods; accessories for the aforesaid goods, namely power supplies, electrical cables, cable adapters being cable connectors, tripods, swivel microphone mounts, microphone capsule extensions being microphone modules, table stands for microphones, floor stands for microphones, microphone tilting apparatus being microphone stands, swan necks for microphones being booms for microphones, windscreens for microphones, microphone mounts* |
| U 87<br><br>Reg. No. 6,886,635 | Filing Date:<br>Apr. 1, 2021<br><br>Registration Date:<br>Nov. 1, 2022 | Class 9: *Equipment for the recording and reproduction of electroacoustic or acoustic signals; microphones; headsets, namely, headphones; studio monitor loudspeakers; microphone pre-amplifiers; audio interfaces; structural parts of the aforesaid goods; accessories for the aforesaid goods, namely power supplies, electrical cables, cable adapters being cable connectors, tripods, swivel microphone mounts, microphone capsule extensions being microphone modules, table stands for microphones, floor stands for microphones, microphone tilting apparatus being microphone stands, swan necks for microphones being* |

| | | *booms for microphones, windscreens for microphones, microphone mounts* |
|---|---|---|

21.    True and correct copies of the Registration Certificates for the Neumann Marks are attached hereto as **Exhibit C**.

22.    Each of the Neumann Marks is valid and legally enforceable.

23.    Plaintiff has achieved considerable goodwill and fame in the United States and abroad in connection with its microphones and related products offered under the famous Neumann Marks.

24.    Plaintiff's NEUMANN® microphones have been featured in varied well-known national publications such as *Forbes*, *Sound on Sound*, *Mix*, and *Microphone Geeks*, among others.

25.    Plaintiff's NEUMANN® microphones have also been employed in the production of national television programs, such as, The Tonight Show with Jay Leno and the Late Show with David Letterman.

**B.    Plaintiff's Distinctive Trade Dress**

26.    Plaintiff's NEUMANN® microphones are associated with an inherently distinctive and exclusive Trade Dress which includes, as principal features, a head grille having a generally transverse wedge shape, a wide top, front and back panels tapered toward the top, and rounded edges together with a cylindrical base ring. An example of this trade dress is exemplified in **Exhibits A, B** and **D**.

27.    Plaintiff owns U.S. Trademark Registration No. 2,337,377 issued on the Principal Register and directed to this distinctive Trade Dress product configuration ("Trade Dress"):

| Mark | Filing Date/ Registration Date | Goods/Services |
|---|---|---|
| <br>Reg. No.: 2,337,377 | Filing Date:<br>Jun. 09, 1998<br><br>Registration Date:<br>Apr. 04, 2000 | Class 9: *Microphones* |

28.     A true and correct copy of the Registration Certificate for Registration No. 2,337,377 is attached hereto in **Exhibit C**.

29.     Plaintiff has utilized this distinctive Trade Dress since at least as early as 1952.

30.     Plaintiff has employed this Trade Dress across many microphone models, including those bearing trademarks M 49®, TLM 102®, TLM 103®, and U 87®.

31.     By virtue of Plaintiff's continuous and exclusive use of this Trade Dress over the course of many years, purchasers and prospective purchasers have come to associate such Trade Dress with Plaintiff's NEUMANN® microphones.

32.     Knowledge of Plaintiff's Neumann Marks and Trade Dress is widespread; the music and entertainment industry widely recognizes the fame and excellence of Plaintiff's NEUMANN® microphones bearing the Neumann Marks and Trade Dress.

33.     Plaintiff broadly promotes its microphones bearing the Neumann Marks and Trade Dress on its website that is accessible by the public, including consumers in the United States, at https://www.neumann.com/en-en/.

34.     The Neumann Marks and Trade Dress are well-known with valuable goodwill belonging exclusively to Plaintiff.

**C.     Defendants' Counterfeit Goods and Unauthorized Use of the Neumann Marks and Trade Dress**

35.     Defendants produce, advertise, market, offer for sale, and sell counterfeit knock-off microphones that are identical (or nearly identical) to Plaintiff's Trade Dress Dress and bear

infringing marks, including the Neumann Marks and/or confusingly similar variations thereof (the "Counterfeit Products").

36.    Defendants have assigned specific designations to its products depending on which of Plaintiff's microphones it is copying. For example, a mimic of Plaintiff's NEUMANN® U 87® microphone is designated as "GTZ 87" on Defendants' website.

37.    Moreover, Defendants produce, advertise, market, offer for sale, and sell counterfeit knock-off microphones while displaying photographs of genuine NEUMANN® microphones, illustrated at https://gototoolz.com/shop/ols/products/gtz87ai-vintage and exemplified below:



38.    Defendants employ an infringing diamond shaped three dimensional plaque or badge, which is affixed to the base of counterfeit knock off microphones, which  is confusingly similar to the NEUMANN® mark of Plaintiff's plaque or badge three dimensional trademark Registration No. 698,915 (in an attempt to confuse consumers as to the source of its Counterfeit Products). An example of such use is exemplified below:




39.     Moreover, Defendant Ian Davidson, owner of GoToToolz, was quoted in an interview with *Nether Voice* in which he describes the development of Defendants' Counterfeit Products, even stating in response to a question comparing the Counterfeit Products to a genuine NEUMANN® U 87® microphone, "the size and color are the same" and "[i]t took years to make a mic body that looks identical." A copy of the interview can be seen here, https://www.nethervoice.com/the-king-of-the-clones/.

40.     Defendants willfully and intentionally advertise, market, offer for sale, and sell Counterfeit Products that bear the Neumann Marks and copy the design and Trade Dress associated with Plaintiff's NEUMANN® microphones.

41.     When prospective purchasers see Defendants' Counterfeit Products bearing the Neumann Marks and copying Plaintiff's registered Trade Dress associated with Plaintiff's microphones, those prospective purchasers will likely view such Counterfeit Products as being, in fact, Plaintiff's products or as being authorized by or associated with Plaintiff.

42.     Defendants' actions have also created post-sale confusion among end users exposed to the Counterfeit Products. End users may further associate the quality of the Counterfeit Products offered by Defendants with genuine NEUMANN® microphones, and musicians, vocalists, instrumentalists, broadcasters and other performers may decide to avoid Plaintiff's

11

microphones in the future. As such, Plaintiff's reputation for its famous and well-respected microphones will be and has been damaged.

43. Because the Counterfeit Products are designed as exact (or nearly exact) copies of Plaintiff's products but of lower quality, those who encounter the Counterfeit Products post-sale will be likely be confused as to the origin of the goods.

44. Defendants' marketing, offering for sale, and selling of the Counterfeit Products is therefore likely to cause confusion in the marketplace for microphones.

45. Defendants knowingly offer the Counterfeit Products for sale with the knowledge and intent that such Counterfeit Products be recognized as consumers as genuine products of Plaintiff.

## COUNT I
### (Infringement of Registered Trademarks Under 15 U.S.C. § 1114)

46. Defendants' unauthorized use of the Neumann Marks and registered Trade Dress (Trademark Reg. No. 2,337,377) is likely to cause confusion, to cause mistake, and to deceive people into believing that Defendants' goods are authorized by, related to, or associated with Plaintiff, when they are not. Accordingly, Defendants' unauthorized use constitutes infringement of Plaintiff's Neumann Marks and registered Trade Dress.

47. By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

48. Defendants' aforementioned infringing acts are willful, wanton, and in utter disregard of Plaintiff's rights.

49. Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## COUNT II
### (Trademark Infringement Under Common Law)

50.     Defendants' unauthorized use of the Neumann Marks is likely to cause confusion, to cause mistake, and to deceive people into believing that Defendants' goods are authorized by, related to, or associated with Plaintiff, when they are not. Accordingly, Defendants' unauthorized use constitutes infringement of Plaintiff's common law NEUMANN trademark.

51.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

52.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

53.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## COUNT III
### (Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(b))

54.     Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in Plaintiff's Neumann Marks, Defendants have knowingly and willfully facilitated, financed, and participated in the distribution, advertisement, offering for sale, and sale of Counterfeit Products to the consuming public in direct competition with Plaintiff, in or affecting interstate commerce, and/or acted with reckless disregard to the rights of Plaintiff in the Neumann Marks in participating in such activities.

55.     The Counterfeit Products that are advertised, marketed, offered and sold to the public by way of Defendants' website and other services reproduce, counterfeit, copy, and colorably imitate Plaintiff's Neumann Marks and Trade Dress or display spurious designations

that are identical with, or substantially indistinguishable from, Plaintiff's Neumann Marks and Trade Dress. Defendants have thus caused reproductions, counterfeits, copies, and colorable imitations of Plaintiff's Neumann Marks and Trade Dress to be applied to labels and advertisements to be used in commerce in connection with the sale and distribution of Counterfeit Products, which is likely to cause confusion, mistake, or to deceive.

56.     Defendants' participation, financing, and/or facilitation of this unauthorized use of Plaintiff's Neumann Marks and Trade Dress on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff. Defendants' actions constitute willful counterfeiting of Plaintiff's Neumann Marks and Trade Dress in violation of 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c).

57.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to their valuable Neumann Marks and Trade Dress, and other damages in an amount to be proven at trial.

58.     Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendants' facilitation of and participation in the sale of Counterfeit Products unless this Court enjoins Defendants from such fraudulent business practices.

## COUNT IV
### (Trade Dress Infringement Under 15 U.S.C. § 1125(a))

59.     Plaintiff's Trade Dress for its famous microphone products is distinctive and is comprised of, as its principal features, a head grille having a generally transverse  wedge shape, a wide top, front and back panels tapered toward the top and rounded edges together with a cylindrical base ring.

60.     Plaintiff's Trade Dress is not functional as it is possible for one to produce and use microphones with  different designs and shapes.

14

61.     Plaintiff has been using its Trade Dress in connection with microphones since at least as early as 1952.

62.     Consumers have come to associate this Trade Dress with the microphones that Plaintiff sells under the Neumann Marks.

63.     Defendants use identical (or nearly identical) trade dress and design in its microphone products, many of which also bear the Plaintiff's famous NEUMANN® mark in a deliberate attempt to create consumer confusion that the infringing products offered by Defendants are actually the well-known products of Plaintiff.

64.     Defendants have intentionally duplicated Plaintiff's Trade Dress to utilize on its infringing and counterfeit products, which they sell in markets that serve customers that would recognize Plaintiff's Trade Dress.

65.     Defendants use Plaintiff's distinctive Trade Dress with the intention to profit from consumer confusion and to capitalize on the goodwill associated with Plaintiff's well-known products.

66.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

67.     Defendants' aforementioned infringing acts are willful, wanton, and in utter disregard of Plaintiff's rights.

68.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## COUNT V
### (Trademark Infringement Under 15 U.S.C. § 1125(a))

69.     Defendants' unauthorized use of the Neumann Marks is likely to cause confusion, to cause mistake, and to deceive people into believing that Defendants' goods and services are authorized by, related to, or associated with Plaintiff. Accordingly, Defendants' unauthorized use constitutes infringement of Plaintiff's Neumann Marks.

70.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

71.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

72.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

**COUNT VI**

**(False Representation Under 15 U.S.C. §1125(a))**

73.     As a result of the experience, care, and service of Plaintiff in producing and providing Plaintiff's microphones, these products have become widely known and have acquired a worldwide reputation for excellence. Moreover, the Neumann Marks and Trade Dress have become associated with Plaintiff's products, and have come to symbolize the reputation for quality and excellence associated with Plaintiff and authentic microphones produced by Plaintiff. As such, the Neumann Marks and Trade Dress have attained secondary meaning, and are inherently distinctive.

74.     Defendants' use of the Neumann Marks and Trade Dress on or in connection with the Counterfeit Products, as alleged above, is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation

of the Counterfeit Products, and is likely to cause such people to believe in error that the Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by Plaintiff, or that Defendants are in some way affiliated with Plaintiff.

75.    Defendants' actions, including but not limited to their unauthorized use in commerce of the Neumann Marks and images of genuine NEUMANN® microphones constitute false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which have caused, and are likely to cause, confusion, mistake and deception, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.    Defendants' actions as described above, including their unauthorized, false, and misleading use in commerce of the Neumann Marks, Trade Dress and images of genuine NEUMANN® microphones on Counterfeit Products and other unauthorized uses of Plaintiff's Neumann Marks in interstate commerce, have caused, and unless restrained will continue to cause, great and irreparable injury to Plaintiff, and to the business and goodwill represented by the Neumann Marks and Trade Dress in an amount that cannot presently be ascertained, leaving Plaintiff with no adequate remedy at law.

## COUNT VII
### (Unfair Competition Under 15 U.S.C. § 1125(a))

77.    Defendants' unauthorized use of the Neumann Marks and Trade Dress is likely to cause confusion, to cause mistake, and to deceive people into believing that Defendants' goods and services are authorized by, related to, or associated with Plaintiff. Therefore, Defendants' unauthorized use constitutes unfair trade practices, inequitable conduct, and unfair competition.

78.    By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

79.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

80.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## COUNT VIII
### (Unfair Competition Under New York Common Law)

81.     Defendants' unauthorized use of the Neumann Marks and Trade Dress is likely to cause confusion mistake, and to deceive consumers into believing that Defendants' goods and services are authorized by, related to, or associated with Plaintiff, when they are not. Therefore, Defendants' unauthorized use constitutes common law unfair trade practices, inequitable conduct, and unfair competition.

82.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

83.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

84.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## COUNT IX
### (Trademark Dilution Under 15 U.S.C. § 1125(c))

85.     Plaintiff's NEUMANN® marks (and plaque or badge design) (U.S. Registration No. 698,915) and  NEUMANN® (U.S. Registration No. 2,166,903) are famous, distinctive, and

widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services since long before Defendants' first use of their infringing marks.

86.     Defendants' unauthorized use of the NEUMANN® Mark and logo is likely to dilute by blurring the distinctive qualities of Plaintiff's famous marks, and will lessen the ability of Plaintiff to distinguish its goods and services from those of Defendants.

87.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

88.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff's rights.

89.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## COUNT X
### (Trademark Dilution Under N.Y. Gen. Bus. L. § 360-1)

90.     Plaintiff's  NEUMANN® marks (and plaque or badge design) (U.S. Registration No. 698,915) and  NEUMANN® (U.S. Registration No. 2,166,903) are famous, distinctive, and widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's microphones and were famous long before Defendants' first use of their infringing marks.

91.     Defendants' unauthorized use of the term "Neumann" and  plaque or badge design is likely to cause dilution of Plaintiff's marks NEUMANN ®  (U.S. Registration No. 698,915) and NEUMANN® (U.S. Registration No. 2,166,903).

92.     By reason of Defendants' wrongful acts aforementioned, Plaintiff has suffered and will continue to suffer monetary damages, the full extent of which is as yet undetermined.

93.     Defendants' wrongful acts aforementioned are willful, wanton, and in utter disregard of Plaintiff 's rights.

94.     Plaintiff has no adequate remedy at law and is presently suffering and will continue to suffer irreparable harm and damage to its business reputation and goodwill if such infringing activities are allowed to continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     A judgment and declaration that Defendants have infringed Plaintiff's Neumann Marks, namely NEUMANN® (U.S. Registration No. 698,915), NEUMANN® (U.S. Registration No. 2,166,903), KMS 105® (U.S. Registration No. 6,886,632), M 49® (U.S. Registration No. 6,770,185), 49® (U.S. Registration No. 6,874,549), TLM 102® (U.S. Registration No. 6,886,631), TLM 103® (U.S. Registration No. 6,886,634), U 47® (U.S. Registration No. 6,886,633), and U 87® (U.S. Registration No. 6,886,635) under 15 U.S.C. § 1114, infringed Plaintiff's registered trade dress (U.S. Registration No. 2,337,377), infringed Plaintiff's trademark rights in the Neumann Marks under common law and 15 U.S.C. § 1125(a), engaged in counterfeiting under 15 U.S.C. § 1114(1)(b), engaged in false representation under 15 U.S.C. § 1125(a), engaged in unfair competition under 15 U.S.C. § 1125(a) and New York common law; and are liable for trademark dilution under 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. L. § 360-1;

B.     Immediately and permanently enjoin and restrain Defendants, their officers, agents, servants, employees, assigns, attorneys, and those in active concert or participation therewith, from:

i.     manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling, or otherwise offering for sale Counterfeit Products or

any other products confusingly similar to Plaintiff's products, or that otherwise bear, contain, display, or utilize any of Plaintiff's Neumann Marks or Trade Dress, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Neumann Marks or Trade Dress;

        ii.      making or employing any commercial use of Plaintiff's Neumann Marks or Trade Dress, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Neumann Marks or Trade Dress;

        iii.     using any false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed or authorized by originate from or affiliated or connected with Plaintiff;

        iv.     doing any acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendants come from Plaintiff or its licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiff;

        v.      moving, returning, or otherwise disposing of, in any manner, any Counterfeit Products or any other products confusingly similar to Plaintiff's products, or that otherwise bear, contain, display, or utilize any of Plaintiff's Neumann Marks or Trade Dress, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Neumann Marks;

vi.        secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all unauthorized products which infringe Plaintiff's Neumann Marks or Trade Dress;

vii.       further diluting and infringing Plaintiff's Neumann Marks or Trade Dress and damaging Plaintiff's goodwill;

viii.      otherwise competing unfairly with Plaintiff or any of their authorized licensees in any manner; and

ix.        assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (i) – (viii), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding prohibitions set forth in subparagraphs (i) – (viii).

C.        An accounting to Plaintiff for all sales, receipts, assets, profits or other gains derived directly or indirectly from Defendants' unlawful activity;

D.        An award of such damages as Plaintiff has sustained, is sustaining, or will sustain by reason of Defendants' unlawful activity;

E.        An award of punitive and exemplary damages in an amount to be determined;

F.        An award of treble damages and an award of Defendants' profits under 15 U.S.C. § 1117;

G.        An award of attorneys' fees under 15 U.S.C. § 1117 and related nontaxable expenses;

H.      An award of pre- and post-judgment interest;

I.      Taxable costs under 28 U.S.C. § 1920;

J.      Direct Defendants to recall and remove from all websites, online marketplaces, or other channels of commerce, any Counterfeit Products or any other products confusingly similar to Plaintiff's products, or that otherwise bear, contain, display, or utilize any of Plaintiff's Neumann Marks or Trade Dress, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Neumann Marks or Trade Dress, that are in Defendants' possession or control, and all means of making the same;

K.      Direct Defendants to deliver up for destruction all Counterfeit Products or any other products confusingly similar to Plaintiff's products, or that otherwise bear, contain, display, or utilize any of Plaintiff's Neumann Marks or Trade Dress, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Neumann Marks or Trade Dress, that are in Defendants' possession or control, and all means of making the same, in accordance with 15 U.S.C. § 1118;

L.      Direct Defendants to deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of Defendants bearing any of Plaintiff's Neumann Marks or Trade Dress, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiff's Neumann Marks or Trade Dress, in accordance with 15 U.S.C. § 1118;

M.      Direct Defendants to supply Plaintiff with a complete list of entities from whom they collected and to whom they distributed and/or sold Counterfeit Products or any other products confusingly similar to Plaintiff's Neumann Marks or Trade Dress, or that otherwise bear, contain,

display or utilize any of Plaintiff's Neumann Marks or Trade Dress, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiff's Neumann Marks or Trade Dress, and to provide documentation of the manner through which the Counterfeit Products or other products were paid, including any bank accounts to, through, or from which funds were sent;

      N.    Direct Defendants to file with the Court and serve on counsel for Plaintiff within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with any injunction which the Court may enter in this action; and

      **O.**    Other and further relief as this Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: July 31, 2023

Respectively submitted,
**HAUG PARTNERS LLP**

By:  /s/Ben Natter/

Ben Natter
Michael Barer
745 Fifth Avenue, 10th Floor
New York, NY 10151
Tel: (212) 588-0800
bnatter@haugpartners.com
mbarer@haugpartners.com

*Attorneys for Plaintiff*
*Georg Neumann GmbH*